AUDREY STRAUSS
United States Attorney
Southern District of New York
By: CHARLES S. JACOB
     ILAN STEIN
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. No. (212) 637-2725/2525
Fax No. (212) 637-2702

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RAFAEL ALVAREZ and ATAX NEW YORK, LLC d/b/a ATAX NEW YORK-MARBLE HILL d/b/a ATAX CORPORATION, <br><br> Defendants. | <u>**AMENDED COMPLAINT**</u> <br><br> No. 21 Civ. 1930 (JSR) |

Plaintiff the United States of America, by its attorney, Audrey Strauss, United States

Attorney for the Southern District of New York, alleges as follows:

1.      The United States brings this action to obtain a permanent injunction against

Defendant tax preparers Rafael Alvarez and ATAX New York, LLC. Defendants have prepared

and filed fraudulent tax returns for their customers in order to reduce their customers' tax

liability and generate refunds to which those customers are not entitled.

2.      The United States seeks the entry of a permanent injunction against Defendants:

(i) pursuant to 26 U.S.C. § 7407, to bar them permanently from preparing federal tax returns and

other related documents and forms on behalf of other taxpayers; (ii) pursuant to 26 U.S.C.

§ 7408, to bar them from engaging in any activity subject to penalty under 26 U.S.C. § 6701; and (iii) pursuant to 26 U.S.C. § 7402, to bar them from engaging in conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws. Pursuant to 26 U.S.C. § 7402, the United States also seeks an order requiring Defendants to disgorge any ill-gotten gains to the United States.

## Jurisdiction and Venue

3.      Pursuant to 26 U.S.C. §§ 7402, 7407 and 7408, this action has been commenced at the direction of a delegate of the Attorney General of the United States based on a request by a delegate of the Secretary of the Treasury.

4.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1340, and 1345, and 26 U.S.C. § 7402(a).

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this District and a substantial part of the actions giving rise to this suit took place in this District and, pursuant to 26 U.S.C. § 7408(a), because Defendants have engaged in specified conduct, which the United States is seeking to enjoin, in this District.

## The Parties

6.      The United States brings this action on behalf of the Internal Revenue Service ("IRS"), an agency of the federal government and a bureau of the U.S. Department of the Treasury.

7.      ATAX New York, LLC, also previously doing business as ATAX New York-Marble Hill and ATAX Corporation ("ATAX New York"), is a New York-registered limited liability company. During the time period relevant to this complaint, ATAX New York operated a tax preparation store located at 5536 Broadway, Bronx, NY 10463. ATAX New York charged

fees to its customers for the preparation of federal tax returns. On average, ATAX New York charged $160 per return. ATAX New York advertised its business to customers under the name "ATAX -Marble Hill."

8.      An IRS identifier, the Electronic Filing Identification Number ("EFIN"), identifies all electronic tax filings made on behalf of a particular tax preparation company, such as ATAX New York. A tax preparation company must obtain an EFIN from the IRS prior to filing any returns electronically. In 2012, "ATAXCORPORATION d/b/a ATAX" applied for an EFIN, and the IRS subsequently assigned it the following EFIN: 261503. Defendants prepared and filed federal income tax returns using this EFIN. The tax returns filed under this EFIN have listed the following tax preparer firm names in those filed returns: ATAX Marble Hill, ATAX Marble Hill NY, ATAX Corporation, and ATAX New York LLC.

9.      Rafael Alvarez ("Alvarez") is a tax preparer and the sole member of ATAX New York. He has been preparing tax returns since at least 1990. Alvarez prepared tax returns for ATAX New York customers and supervised and directed other ATAX New York personnel. He resides in Cortland Manor, New York.

## The Defendants' Tax Preparation Business

10.      Defendants prepared federal income tax returns for their customers. Defendants prepared the IRS Form 1040, the form used for most individual annual income tax returns, as well as various schedules and other IRS forms used by taxpayers to report certain itemized deductions and losses in connection with their returns. As relevant here, Defendants have prepared and filed the following schedules and forms with many of their customers' tax returns:

      a.      ***Schedule A.*** Schedule A is used to claim certain itemized tax deductions, including but not limited to those for medical and dental expenses, gifts to

charity, job-related and other miscellaneous expenses (such as unreimbursed employee business expenses—sometimes known as "UBE"—including job-related clothing, shoes, training and education, public transportation, and meals), and state and local taxes paid.

b.   ***Schedule C***. Schedule C is filed for taxpayers who operate sole proprietorship businesses to report those businesses' gross receipts, expenses, and profits or losses.

c.   ***Schedule D***. Schedule D is used by taxpayers to report capital gains and losses, as well as "capital loss carryover," the amount of capital losses that a taxpayer may carry forward into future tax years that may potentially be offset against capital gains in those future tax years. Taxpayers may deduct a maximum of $3,000 in net capital losses (*i.e.*, the amount that their total capital losses exceed their total capital gains) for any given tax year.

d.   ***Schedule E***. Taxpayers use Schedule E to report, among other things, income or loss from rental real estate or from S Corporations (corporate entities that elect to pass the net amount from their corporate income, losses, deductions, and credits through to their shareholders or members for federal tax purposes).

e.   ***Form 3903***. Taxpayers use Form 3903 to report certain qualifying moving expenses.

f.   ***Form 8917***. Taxpayers use Form 8917 to report certain qualifying deductions for college or university tuition and related fees.

11.   Defendants also prepared individual federal tax returns that claim "head of household" status on behalf of their customers. Taxpayers are entitled to file returns as a "head

of household" if they are unmarried or considered unmarried, a qualifying person lived with them in their home for more than half the year (unless that qualifying person was the taxpayer's parent), and the taxpayer paid more than half the cost of keeping up the home for the year. Taxpayers who are heads of household typically pay lower tax rates than those for taxpayers who are single or married filing separately. In addition, qualified heads of household receive a higher standard deduction than that available to taxpayers who are single or married filing separately.

12.     ATAX New York employed numerous tax preparers. Tax preparers were assigned a non-transferable Preparer Tax Identification Number ("PTIN") by the IRS, which is a unique identification number that must be affixed to every return they prepare.

13.     Over forty paid preparers prepared and filed tax returns on behalf of ATAX New York customers for each of the "tax processing" years 2016 to 2019 (referring to the calendar years in which the returns were filed, not the years giving rise to the underlying tax liability). For those tax processing years, ATAX New York prepared and filed over 36,000 federal income tax returns on behalf of its customers.

14.     Alvarez was a paid preparer for ATAX New York. For tax processing years 2016 through 2019, over 840 returns filed on behalf of ATAX New York customers identified Alvarez as the paid preparer. Further, as described below, Alvarez also fraudulently altered tax returns initially prepared by other ATAX New York tax preparers, which were submitted to the IRS using the PTINs of those other preparers.

### *The Defendants' Preparation and Filing of Fraudulent Tax Returns*

15.     For tax processing years 2016 to 2019, the vast majority of tax returns prepared

and filed by Defendants included a tax refund claim.

| Returns Prepared and Filed by ATAX New York | | | |
|---|---|---|---|
| Processing Year | Total Number Returns Prepared | Number of Returns Claiming a Refund | Percentage of Returns Claiming a Refund |
| 2016 | 9,191 | 8,404 | 91% |
| 2017 | 10,514 | 9,547 | 91% |
| 2018 | 6,816 | 6,390 | 94% |
| 2019 | 9,604 | 8,515 | 89% |

| Returns Prepared and Filed by ATAX New York That Identified Alvarez as the Paid Preparer | | | |
|---|---|---|---|
| Processing Year | Total Number Returns Prepared | Number of Returns Claiming a Refund | Percentage of Returns Claiming a Refund |
| 2016 | 324 | 289 | 89% |
| 2017 | 441 | 362 | 82% |
| 2018 | 49 | 45 | 92% |
| 2019 | 52 | 45 | 87% |

16.     From at least 2016 through 2019, Defendants regularly prepared and filed false

federal income tax returns for their customers by fabricating Schedule A unreimbursed business

expenses and charitable contributions, Schedule C sole proprietorship expenses, Schedule D

capital loss carryovers, Schedule E rental property losses and partnership losses, Form 3903

moving expense deductions, and Form 8917 tuition expenses. Many tax returns prepared and

filed by Defendants during this same time period also falsely claimed "head of household" status

for their customers.

17.     As part of Defendants' pattern and practice, Alvarez agreed to numerous requests

by ATAX New York customers to meet with him, even when other preparers at ATAX New

York had already prepared draft returns for the customers. On many such occasions, Alvarez

regularly fabricated items on those customers' tax returns. In some instances, Alvarez would fabricate items using the computer located in his personal office at ATAX New York, where he had electronic access to the customer's draft return. On other occasions, Alvarez fabricated items on the return by electronically modifying the return at the computer located on the desk of the original tax preparer in ATAX New York's office.

18.    A number of ATAX New York tax preparers knew that Alvarez had fabricated items on Defendants' customers' returns because these tax preparers had interviewed the customers or reviewed the customers' files. Those tax preparers had identified no basis for the fictitious deductions or expenses that Alvarez inserted into the finalized returns that were filed with the IRS. Defendants filed many of these returns with the IRS using the PTIN of the original tax preparer.

19.    Items fabricated by Alvarez through this pattern and practice included fraudulent Schedule C sole proprietorship expenses, fraudulent Schedule A unreimbursed business expenses, fraudulent claims of head-of-household status, fraudulent Schedule E losses for nonexistent rental properties, false moving expenses, false tuition and education expenses, and false capital-loss carryovers.

### *IRS Audits of Defendants' Customers*

20.    As of January 21, 2021, the IRS had completed audits of twenty-eight customer returns prepared by ATAX New York for the 2017 tax year, and eight returns for the 2018 tax year. Thirty-two of those audits—*i.e.*, 88.9% of the total—resulted in an increased tax liability for the taxpayers. Alvarez is listed as the paid preparer on 25 of these audited returns, of which 21 resulted in increased tax liability. The average tax deficiency for the 36 returns with completed examinations was approximately $4,588 per return.

### *Examples of "Head of Household" Fraud*

21.     For the 2018 tax year, taxpayers were required to identify the names and social security numbers of any dependents that did not live with the taxpayer on their tax returns to claim "head of household" status. ATAX New York prepared and filed returns that fraudulently claimed "head of household" status for their customers by using bogus social security numbers for fictitious dependents. Some of the social security numbers used by ATAX New York for the fictitious dependents belonged to deceased persons, while others were not associated with any persons at all. Other individuals identified as claimed dependents on ATAX New York's customers' returns themselves claimed "head of household" status on their own returns, thus demonstrating that they could not qualify as dependents on other' tax returns.

22.     The following table includes seventeen specific examples for the 2018 tax year where ATAX New York prepared and filed returns with bogus social security numbers for dependents, or for purported dependents who, on their own federal tax returns, also claimed that they had dependents.

| Taxpayer[1] | Information Regarding Purported Dependents |
|---|---|
| Customer 1, Customer 2, Customer 3 | A relevant IRS database has no record of any individual associated with the social security number listed in the taxpayer's return for the purported dependent. |
| Customer 4, Customer 5 | IRS records show that the social security number listed in the taxpayer's return for the purported dependent belongs to a deceased person. |

[1] In order to protect the privacy of the customers identified in this Amended Complaint, the Amended Complaint refers to these customers through anonymized numbers. The Government has provided Defendants with a key that identifies the individual associated with each respective customer number.

| | |
|---|---|
| Customer 6, Customer 7, Customer 8, Customer 9, Customer 10, Customer 11, Customer 12 | IRS records show that the social security number listed in the taxpayer's return for the purported dependent in fact belongs to a person other than the purported dependent. |
| Customer 13, Customer 14, Customer 15, Customer 16, Customer 17 | The purported dependent claimed by these taxpayers' returns also filed his or her own federal income tax return for the 2018 tax year, and also claimed "head of household" status or their own dependent. |

23.     ATAX New York also re-used bogus social security numbers for fictitious dependents. For example, in the tax processing year 2019, ATAX New York prepared and filed tax returns of behalf of three customers that claimed head of household status and listed an identical social security number for the dependent. But these purported dependents were identified by three different names on these three tax returns prepared and filed by ATAX New York, despite having the same purported social security number.

### Additional Specific Examples of Fraudulent Tax Returns Prepared and Filed by Defendants

24.     As part of its investigation into Defendants' practices, the IRS also sent a questionnaire to fifty ATAX New York customers, focusing on the 2015 through 2017 tax years, and received ten responses. As described in further detail below, a comparison of these responses against the customers' federal income tax returns and additional information available to the IRS revealed fraudulently claimed expenses and deductions on behalf of all ten customers. For example, certain of the customers stated that they did not incur any capital losses during the relevant time period but their tax returns, prepared and filed by Defendants, claimed capital losses.

25.     Four of the fraudulent tax returns for these ten customers listed Alvarez as the paid preparer. As further described below, certain other ATAX New York customers also

identified Alvarez as the preparer of their returns even though the relevant tax returns were submitted using the PTINs of other preparers.

26.     By including fabricated and inflated items on their customers' federal tax returns, Defendants caused the customers' tax liabilities to be reduced or caused them to receive tax refunds to which they were not lawfully entitled.

27.     Defendants, for example, made the following false statements on their customers' tax returns:

### a.   ATAX New York and Alvarez's Preparation of Customer 18's Tax Returns

28.     ATAX New York prepared Customer 18's tax returns for tax years 2014 through 2017. Customer 18's 2017 tax return identified Alvarez as the paid preparer, and his 2014, 2015 and 2016 returns identified other ATAX New York tax preparers as the paid preparers.

29.     In his response to the IRS questionnaire, Customer 18 wrote "none" in response to questions asking: (i) him to list any stocks he sold from 2015 to 2017, (ii) whether he was aware of the capital loss carryover shown on his Schedule D, and (iii) when any capital losses originated, as reflected on his Schedule D. Customer 18 also answered "none" in response to a question asking what he provided to the preparer to verify the capital loss. For tax years 2015-2017, however, the Schedules D prepared by Defendants for Customer 18 fraudulently asserted that he had incurred long-term capital loss carryovers in the following amounts: $7,500 (2015); $4,500 (2016); and $11,500 (2017). Further, by definition, a capital loss carryover requires that the taxpayer had incurred a capital loss in a prior tax year. But Customer 18's 2013 and 2014 tax returns did not assert any capital losses on Schedules D other than a $10,500 capital loss carryover claimed on Customer 18's 2014 tax return—his self-prepared 2013 income tax return did not claim a capital loss at all, or attach any Schedule D. Thus, the capital loss carryovers

claimed on Customer 18's 2014 and 2015 federal income tax return could not have arisen from a legitimate capital loss. Similarly, Customer 18's 2016 and 2017 tax returns did not assert any capital losses other than the carryovers described in this paragraph. Thus, the $7,000 claimed increase in capital loss carryover from 2016 to 2017 was also fraudulent. For each of the 2014 to 2017 tax years, the returns prepared by Defendants offset $3,000 of capital losses against Customer 18's taxable income, the maximum amount permitted by law, thus fraudulently reducing his taxable income.

30.     Customer 18's 2016 tax return also fraudulently claimed a $4,000 deduction for college tuition and related fees, identifying Customer 18 as the student for whom the deduction had been claimed. In his response to the IRS questionnaire, however, Customer 18 answered "none" in response to questions on whether he had attended any college or post-secondary school in 2016, and as to whether he had paid any tuition or other education expenses in that year.

31.     After Defendants caused these fraudulent returns to be filed, Customer 18 received a tax refund for each of the 2015-2017 tax years, which exceeded the refunds he would have received had accurate returns been filed on his behalf.

### b. ATAX New York and Alvarez's Preparation of Customer 19's Tax Returns

32.     ATAX New York prepared Customer 19's tax returns for tax years 2015 through 2018. Customer 19's 2017 tax return identified Alvarez as the responsible paid preparer, and his 2015, 2016, and 2018 returns identified other ATAX New York tax preparers as the paid preparers.

33.     Customer 19's 2017 tax return fraudulently claimed inflated unreimbursed business expenses. Specifically, this return claimed that Customer 19 had incurred $8,635 in unreimbursed business expenses for transportation expenses ($1,344) and "business" expenses

($7,291). In his response to the questionnaire, however, Customer 19 answered "none" in response to a questions asking what type of required expenses he incurred for work, whether he told his preparer about required expenses for work, and whether the preparer discussed unreimbursed business expenses with him. In addition, although Customer 19 stated that he provided receipts to the preparer regarding expenses for work, and also identified the use of his vehicle for work, Customer 19's 2017 tax return identified his profession as a social worker, a position for which such large amounts of non-transportation "business" expenses are atypical.

34.     For tax years 2016-2018, Customer 19's tax returns also fraudulently asserted that he was a "head of household," by claiming that his daughter was his qualifying person. Tax returns filed by the mother of Customer 19's daughter for this time period, however, revealed that the daughter did not live with Customer 19 during this time. Further, in his questionnaire response, Customer 19 stated that he provided only $100 worth of financial support for his daughter every two weeks, which, upon information and belief, was less than half of her financial support, the threshold for claiming a minor as a qualifying person.

35.     After Defendants caused these fraudulent returns to be filed, Customer 19 received a tax refund for each of the 2015-2018 tax years, which exceeded the refunds he would have received had accurate returns been filed on his behalf.

### c.  ATAX New York and Alvarez's Preparation of Customer 20's Tax Returns

36.     ATAX New York prepared Customer 20's tax returns for tax years 2015 through 2018. Customer 20's 2017 tax return identified Alvarez as the paid preparer and his 2015, 2016, and 2018, returns identified other ATAX New York tax preparers as the paid preparers.

37.     Customer 20's 2016 tax return fraudulently asserted a capital loss carryover of $16,000 on Schedule D, of which $3,000 was offset against income. However, Customer 20's

2015 return did not claim any capital loss or capital loss carryover. Thus, the 2016 capital loss

carryover could not have been possible, given the lack of any capital loss or capital loss

carryover in the prior tax year.

38.     Similarly, Customer 20's 2017 tax return fraudulently claimed a capital loss

carryover of $13,000, of which $3,000 was offset against income. In her response to the IRS

questionnaire, Customer 20 identified one possible capital loss for 2016 and 2017—a $16,000

loan she had provided to a friend and supported by a promissory note. But such a loan is not a

capital loss; a capital loss occurs only when a taxpayer sells a previously purchased asset at a

loss. *See, e.g.*, IRS Topic No. 409, *Capital Gains and Losses*, *available at*

https://www.irs.gov/taxtopics/tc409.

39.     After Defendants caused these fraudulent returns to be filed, Customer 20

received a tax refund from the IRS for each of the 2016 and 2017 tax years, which exceeded the

refunds she would have received had accurate returns been filed on her behalf.

### d.  ATAX New York and Alvarez's Preparation of Customer 21 and Customer 22's Tax Returns

40.     ATAX New York prepared joint federal tax returns for Customer 21 and

Customer 22, a married couple, for tax years 2015 through 2018. Although these tax returns

identified ATAX New York tax preparers other than Alvarez as the paid preparers, Customer 21

stated in her response to the IRS questionnaire that "ATAX (Rafael Alvarez)" had prepared her

federal income tax returns for 2015 through 2017.

41.     Customer 21 and Customer 22's 2016 and 2017 returns fraudulently claimed

Schedule E partnership losses of $25,539 in 2016, and $29,518 in 2017. An IRS database that

maintains partnerships' Employer Identification Numbers does not have any record of the

identification number associated with the partnership that had suffered the purported losses.

Further, in her response to the IRS questionnaire, Customer 21 stated that she did not believe that she had operated a business in 2016 or 2017; and that a business she had operated previously had not been active since 2015, and had incurred no expenses in 2016 or 2017.

42.     Customer 21 and Customer 22's 2015-2017 returns also fraudulently claimed inflated charitable contributions by cash or check in Schedules A: $1,425 in 2015, $3,100 in 2016, and $3,610 in 2017. In her response to the IRS questionnaire, Customer 21 identified only charitable contributions of cash or check in much lower amounts: $740 in 2015, approximately $600 in 2016, and $610 in 2017.

43.     After Defendants caused these fraudulent returns to be filed, Customer 21 and Customer 22 received tax refunds for each of the 2015-2017 tax years, which exceeded the refunds they would have received had accurate returns been filed on their behalf.

### e.  ATAX New York and Alvarez's Preparation of Customer 23's Tax Returns

44.     ATAX New York prepared Customer 23's tax returns for tax years 2015 through 2018. Customer 23's 2017 tax return identified Alvarez as the paid preparer, and his 2015, 2016, and 2018 returns identified other ATAX New York tax preparers as the paid preparers.

45.     Customer 23's 2017 tax return fraudulently asserted a Schedule D capital loss carryover of $6,968, of which $3,000 was offset against income. Although Customer 23 stated in his customer questionnaire response that he had a capital loss that originated in 2016, Customer 23's 2016 tax return had reported $2,475 in capital gains and no capital losses, meaning that Customer 23 had not claimed a capital loss in 2016 that could be carried over to 2017. Further, in his questionnaire response, Customer 23 stated that he provided "closing documents" to ATAX New York in support of a capital loss in 2016, but Customer 23's 2016 tax return, in fact, reported details of a sale of a single-family residence that resulted in a capital gain, not a loss.

Similarly, Customer 23's 2018 tax return did not claim any capital loss, even though $3,968 in purported capital loss carryover, if true, would have carried over from the 2017 tax year.

46.     After ATAX New York caused this fraudulent return to be filed, Customer 23 received a tax refund for the 2017 tax year, which exceeded the refund he should have received had an accurate return been filed on his behalf.

### f.   ATAX New York and Alvarez's Preparation of Customer 24 and Customer 25's Tax Returns

47.     ATAX New York prepared joint federal tax returns for Customer 24 and Customer 25, a married couple, for the tax years 2015 through 2017. Although each of these tax returns listed ATAX New York tax preparers other than Alvarez as the paid preparers, Customer 24 stated in his response to the IRS questionnaire that "Rafael Alvarez" had prepared his returns for 2015-2017.

48.     Customer 24 and Customer 25's 2015 tax return fraudulently claimed $3,658 in moving expenses. However, Customer 24 and Customer 25 listed the same home address in each of their tax returns from 2014 through 2017.

49.     Customer 24 and Customer 25 also fraudulently claimed a $24,803 loss from a rental property on the Schedule E to their 2016 return. The purported address of the rental property was also Customer 24 and Customer 25's home address, which was a single-family condominium.

50.     After Defendants caused these fraudulent returns to be filed, Customer 24 and Customer 25 received tax refunds for the 2015 and 2016 tax years, which exceeded the refunds they would have received had accurate returns been filed on their behalf.

### g. ATAX New York's Preparation of Customer 26 & Customer 27's Tax Returns

51.     ATAX New York prepared joint federal tax returns for Customer 26 and Customer 27, a married couple, for tax years 2015 through 2018.

52.     Customer 26 and Customer 27's 2017 tax return fraudulently asserted a capital loss carryover of $12,524, of which the maximum-permitted $3,000 was offset against other income. In his response to the IRS questionnaire, however, Customer 26 wrote "N/A" in response to questions regarding any stocks he sold during the relevant time period, his awareness of the capital loss carryovers shown on his Schedule D, and when any capital losses originated as reflected on Schedule D. Further, Customer 26 and Customer 27's 2016 tax return had only asserted a $5,524 capital loss carryover and no other capital loss, thus demonstrating that the $7,000 increase in capital loss carryover from 2016 to 2017 was fraudulent.

53.     After ATAX New York caused this fraudulent return to be filed, Customer 26 and Customer 27 received a tax refund for the 2017 tax year, which exceeded the refund they would have received had an accurate return been filed on their behalf.

### h. ATAX New York's Preparation of Customer 28 and Customer 29's Tax Returns

54.     ATAX New York prepared joint federal tax returns for Customer 28 and Customer 29, a married couple, for tax years 2015 through 2018.

55.     Customer 28 and Customer 29's 2016 tax return fraudulently asserted a capital loss carryover of $7,225, of which $3,000 was offset against their income. Their 2015 tax return, however, had asserted only a $3,225 capital loss carryover and no other capital loss; no other explanation was provided on Customer 28 and Customer 29's 2016 Schedule D for the capital loss carryover increase. Further, although Customer 28 stated in his customer questionnaire that

he was aware of a capital loss carryover on his Schedule D, he identified only a capital loss from "[five] years ago," and no other capital losses that he or his wife had incurred in 2015 through 2017. After ATAX New York caused this fraudulent return to be filed, Customer 28 and Customer 29 received a tax refund for 2016, which exceeded the refund they would have received had accurate returns been filed on their behalf.

## Other Wrongful Acts by Alvarez

56.     In August 2017, the IRS commenced a separate civil investigation into a tax preparer identified as Individual 1[2], who had been previously employed by ATAX New York.

57.     As part of its investigation, an IRS Revenue Agent sent a letter to the address listed in the IRS's records for Individual 1 to schedule an appointment. An individual purporting to be Individual 1 appeared for the scheduled interview together with Alvarez. Alvarez participated in the interview in his capacity as a purported representative of Individual 1. He provided the IRS Revenue Agent with an executed copy of the IRS's standard power of attorney form (Form 2848). This form, which Alvarez signed, identified Individual 1 as the represented party, and listed Individual 1's full name and taxpayer identification number.

58.     During this interview, however, Alvarez did not disclose to the IRS Revenue Agent that the person purporting to be Individual 1 at the interview was not, in fact, Individual 1. Upon information and belief, Alvarez knew, at the time of that appointment and when he executed the power of attorney, that this other person was not Individual 1. For example, ATAX New York had employed both Individual 1 and the other person who participated in the interview posing as Individual 1 for several years and thus Alvarez knew them both.

---

[2] Because Individual 1 is not a named party in this action, we have not identified the person by name in this Complaint.

59.     Further, on at least one occasion, Alvarez instructed tax preparers at ATAX New

York, in form and substance, that "UBE will be safe if the UBE is below 25% of AGI," meaning

that the returns they prepare should claim unreimbursed business expenses that are less than 25%

of the taxpayers' reported adjusted gross incomes. On information and belief, Alvarez's

instruction was an attempt to avoid audits triggered by the IRS's systems.

60.     In addition, on certain occasions, ATAX customers brought to Alvarez letters

they had received from the IRS concerning their income tax obligations, and Alvarez told the

customers to ignore the correspondence from the IRS.

### Count I - Injunction Under 26 U.S.C. § 7407

61.     The United States re-alleges and incorporates by reference the allegations set

forth in paragraphs 1-60 above.

62.     Pursuant to 26 U.S.C. § 7407, the Court may enjoin a tax return preparer if it finds

that the preparer has engaged in conduct that is subject to penalty under 26 U.S.C. § 6694(b) and

that injunctive relief is appropriate to prevent the recurrence of the conduct. Section 6694(b), in

turn, imposes penalties on a tax return preparer who willfully attempts to understate the tax

liability of another person or whose reckless or intentional disregard of rules and regulations

results in the understatement of tax liability.

63.     Defendants were income tax return preparers, as defined in 26 U.S.C.

§ 7701(a)(36).

64.     Additionally, if the court finds that a return preparer has continually or repeatedly

engaged in such conduct, and the court further finds that a narrower injunction prohibiting only

the enumerated conduct would not be sufficient to prevent further interference with the proper

administration of the internal revenue laws, the court may enjoin that person from further acting as a federal income tax return preparer.

65.     As set forth above, Defendants continually and repeatedly engaged in conduct that was subject to penalty under 26 U.S.C. § 6694(b) by preparing federal income tax returns for their customers that they knew contained false and/or fraudulent losses, expenses, and deductions. They knew that these returns would result in their customers understating their tax liabilities and receiving unwarranted or inflated tax refunds.

66.     As also set forth above, Defendants engaged in fraudulent or deceptive conduct that substantially interfered with the proper administration of the internal revenue laws.

67.     Injunctive relief is necessary and appropriate to prevent the recurrence of Defendants' misconduct.

68.     In the absence of an injunction, the IRS will be at risk of paying unwarranted or inflated tax refunds to Defendants' customers, or under-collecting those customers' tax liabilities, due to tax returns prepared by Defendants that do not accurately report the amount of federal taxes their customers owe. It may not be possible, and in any event would entail substantial effort, for the IRS to identify and locate all of Defendants' customers and examine their tax returns, and, if necessary, collect any erroneously issued refunds.  Regardless, such efforts would expend scarce IRS resources that could not then be used for other purposes and could not be recovered.

69.     In light of the gravity and duration of Defendants' conduct, as well as the opportunities for future violations, an injunction preventing Defendants only from engaging in specific unlawful behavior would not be sufficient to prevent Defendants' interference with the proper administration of the Internal Revenue Code, *see* 26 U.S.C. § 7407(b)(2).

70.     Pursuant to 26 U.S.C. § 7407, the Court should permanently enjoin Defendants from preparing or filing federal tax returns for others.

## **Count II - Injunction Under 26 U.S.C. § 7408**

71.     The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1-70 above.

72.     Pursuant to 26 U.S.C. § 7408, the Court may enjoin any person from engaging in conduct that is subject to penalty under 26 U.S.C. § 6701 if injunctive relief is appropriate to prevent the recurrence of that conduct. Section 6701, in turn, penalizes any person who aids or assists in the preparation of any portion of a federal tax return or other document knowing that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it would result in an understatement of another person's tax liability.

73.     As set forth above, Defendants continually and repeatedly engaged in conduct that was subject to penalty under 26 U.S.C. § 6701 by knowingly preparing federal income tax returns for their customers that improperly claimed fraudulent deductions and losses and thereby understated the customers' federal tax liabilities.

74.     While Defendants' conduct is subject to penalty under 26 U.S.C. § 6701, penalties alone will not deter them from reverting to such conduct, in light of the gravity and duration of Defendants' conduct, as well as the opportunities for future violations. Unless enjoined, Defendants are likely to continue to prepare tax returns that they know or should know will result in the understatement of their customers' tax liabilities.

75.     In the absence of an injunction, the IRS will be at risk of paying unwarranted or inflated tax refunds to Defendants' customers, or under-collecting those customers' tax liabilities, due to tax returns prepared by Defendants that do not accurately report the amount of

federal taxes their customers owe. It may not be possible, and in any event would entail substantial effort, for the IRS to identify and locate all of Defendants' customers and examine their tax returns.

76. Pursuant to 26 U.S.C. § 7408, the Court should permanently enjoin Defendants from engaging in conduct subject to penalty under the Internal Revenue Code.

### Count III – Injunction Under 26 U.S.C. § 7402

77. The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1-76 above.

78. Pursuant to 26 U.S.C. § 7402, the Court may issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws," and further provides that such injunctive relief is "in addition to and not exclusive of any and all other penalties."

79. As set forth above, Defendants continually and repeatedly engaged in conduct that substantially interfered with the administration and enforcement of the internal revenue laws. Further, unless enjoined from preparing tax returns for others, they are likely to continue to engage in such conduct in the future.

80. In light of their fraudulent and deceptive conduct, the IRS will be exposed to the risk of irreparable injury if Defendants are not barred from preparing tax returns for others. Specifically, in the absence of an injunction, the IRS will be at risk of paying unwarranted or inflated tax refunds to Defendants' customers, or under-collecting those customers' tax liabilities, due to tax returns prepared by Defendants that do not accurately report the amount of federal taxes their customers owe. It may not be possible, and in any event would entail substantial effort, for the IRS to identify and locate all of Defendants' customers and examine their tax returns.

81.     Enjoining Defendants from preparing tax returns for others is in the public interest because an injunction will prevent the recurrence of illegal conduct and the harm such conduct will cause to the IRS and the public.

82.     The Court should therefore order injunctive relief under 26 U.S.C. § 7402(a).

## Count IV – Disgorgement of Ill-Gotten Gains

83.     The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1-82 above.

84.     I.R.C. § 7402(a) authorizes the Court to issue orders, judgments, and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws.

85.     Defendants' conduct substantially interferes with the enforcement of the internal revenue laws. Defendants have caused the United States to issue tax refunds to individuals not entitled to receive them and has caused the United States to lose tax revenue. But for Defendants' conduct, the United States would not have issued these incorrect refunds or lost these tax revenues.

86.     Defendants have unjustly profited from their misconduct at the expense of the United States.

87.     Defendants are not entitled to the ill-gotten gains from their misconduct.

88.     As alleged above, on average, ATAX New York charged its clients approximately $160 for the preparation of an individual federal income tax return. For the tax processing years 2016 to 2019, ATAX New York filed 36,125 federal individual income tax returns on behalf of its clients. For the tax year 2015, in a Form 1120 filed with the IRS (a corporate tax return), ATAX New York reported to the IRS $16,004 in expenses, for rent, advertising, and other

deductions. ATAX New York did not file any Form 1120 with the IRS for the 2016-2018 tax years.

89.     Using its broad authority under § 7402(a), the Court should enter an order requiring Defendants to provide an accounting of, and disgorge to the United States, Defendants' net profits for preparing federal tax returns in which Defendants made reckless or fraudulent claims with respect to their customers' federal income tax liability.

***

WHEREFORE, the United States prays that the Court enter an order that:

A.     Finds that Defendants repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6701, and that injunctive relief pursuant to 26 U.S.C. §§ 7407 and 7408 is appropriate to prevent recurrence of such illegal conduct.

B.     Finds that Defendants engaged in fraudulent or deceptive conduct that substantially interfered with the proper administration of the internal revenue laws, and that injunctive relief pursuant to 26 U.S.C. § 7407 is appropriate for this additional reason.

C.     Finds that Defendants repeatedly engaged in conduct that interfered with the enforcement of the internal revenue laws and that injunctive relief against Defendants is appropriate to prevent recurrence of such conduct pursuant to 26 U.S.C. § 7402 and the Court's inherent authority.

D.     Permanently enjoins Defendants, directly or indirectly, from:

1.     Acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than Alvarez or his spouse, if filing jointly;

2.     Preparing or filing, or assisting in preparing or filing, any federal tax return, amended return, or other federal tax document or form for any person other than Alvarez or his spouse, if filing jointly;

3.     Representing any person before the IRS, or advising, assisting, counseling, or instructing anyone about preparing a federal tax return, other than Alvarez or his spouse;

4.  Owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

5.  Training, instructing, teaching, and creating or providing "cheat sheets," memoranda, directions, instructions, or manuals pertaining to the preparation of federal tax returns;

6.  Employing any person who prepares or files, or assists in preparing or filing, any federal tax return, amended return, or other federal tax document or form for any person other than Alvarez or his spouse, if filing jointly;

7.  Maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number or an Electronic Filing Identification Number;

8.  Having an ownership interest in an entity that is in the business of (i) preparing federal tax returns or other federal tax documents or forms for other persons or representing any person before the IRS; (ii) advising, assisting, counseling, or instructing anyone about preparing a federal tax return; or (iii) licensing rights to operate a tax preparation business or any other tax preparation products;

9.  Providing office space, equipment, or services for, or in any other way facilitating, the work of any person or entity that is in the business of preparing or filing federal tax documents or forms for others or representing persons before the IRS;

10.  Selling, providing access, or otherwise transferring to any person some or all of the assets of ATAX New York generated by its tax return preparation activities, including but not limited to assets such as customer lists;

11.  Advertising tax return preparation services through any medium, including the internet and social media;

12.  Referring any customer to a tax preparation firm or a tax return preparer, or otherwise suggesting that a customer use any particular tax preparation firm or tax return preparer;

13.  Engaging in any conduct that violates 26 U.S.C. §§ 6694 or 6701; and

14.  Engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

E.  Requires Defendants to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, social security number, address, email address, telephone number, and tax period(s) all persons for whom

they prepared federal tax returns or claims for a refund, for tax processing years beginning in 2017 and continuing through the resolution of this litigation;

F. Requires Defendants, within 45 days of receiving the Court's order, to contact by U.S. mail and, if an email address is known, by email, all persons for whom they have prepared federal tax returns, amended tax returns, or claims for refund since January 2015, as well as all employees or independent contractors they have had since January 2015, and to inform them of the permanent injunction entered against them by sending each of them a copy of the order of permanent injunction, with no other enclosures unless approved by the U.S. Attorney's Office for the Southern District of New York;

G. Requires Alvarez, within 45 days of receiving the Court's order, to file a declaration, signed under penalty of perjury, confirming that he has received a copy of the Court's order and complied with its terms;

H. Authorizes the United States to take such steps as necessary, including but not limited to post-judgment discovery, to monitor and ensure compliance with the Court's injunction against Defendants.

I. Retains jurisdiction over Defendants and over this action to enforce any injunction entered against them.

J. Requires Defendants to provide an accounting of, and disgorge to the United States, Defendants' net profits for preparing federal tax returns in which Defendants made reckless or fraudulent claims with respect to their customers' federal income tax liability.

K. Grants such further relief as the Court deems appropriate.

Dated: New York, New York
       May 17, 2021

Respectfully submitted,

AUDREY STRAUSS
United States Attorney
Southern District of New York
*Attorney for the United States of America*

By:   /s/ Charles S. Jacob
      CHARLES S. JACOB
      ILAN STEIN
      Assistant United States Attorneys
      86 Chambers Street, Third Floor
      New York, NY 10007
      Tel: (212) 637-2725/2525
      Fax: (212) 637-2702
      charles.jacob@usdoj.gov
      ilan.stein@usdoj.gov